UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHICAGO TITLE INSURANCE COMPANY,<br><br>PLAINTIFF,<br><br>v.<br><br>OAKLEY HOME BUILDERS, INC.,<br><br>SO DUN INVESTMENTS, LLC,<br><br>STEVEN SOBKOWIAK,<br><br>and<br><br>RYAN DUNHAM,<br><br>DEFENDANTS. | CASE NO. 3:23-CV-158 |

**COMPLAINT FOR REFORMATION AND DECLARATORY JUDGMENT**

Plaintiff, Chicago Title Insurance Company ("Chicago Title"), for its Complaint against Defendants Oakley Home Builders, Inc. ("Oakley"); So Dun Investments, LLC ("So Dun"); Steven Sobkowiak ("Sobkowiak"); and Ryan Dunham ("Dunham"), states as follows:

**PARTIES**

1. Chicago Title is a Florida corporation with its principal place of business in the State of Florida. Chicago Title is a citizen of the state of Florida. Chicago Title is licensed to underwrite policies of title insurance throughout the United States, including in the State of Indiana, which is where the real property at issue in this case is located.

2. Oakley is an Illinois corporation, with its principal place of business in the state of Illinois. Oakley is a citizen of the state of Illinois.

3. Sobkowiak is an individual domiciled in the state of Illinois and is a citizen of Illinois.

4. Dunham is an individual domiciled in the state of Illinois and is a citizen of Illinois.

5. So Dun is an Indiana limited liability company, with its principle place of business in Downers Grove, Illinois. Sobkowiak and Dunham, who are both citizens of Illinois, are the only members of So Dun. Therefore, So Dun is a citizen of Illinois, and is a citizen of no other state.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Chicago Title and the respective Defendants are citizens of different states and the title insurance policy regarding which Chicago Title seeks declarations concerning it and Defendants' rights and obligations has a face amount of $850,000.00.

7. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because this action concerns Chicago Title's rights and obligations under a policy of title insurance issued to Oakley and underwritten by Chicago Title, which policy relates to real property situated within LaPorte County, Indiana.

**STATEMENT OF FACTS**

8. Chicago Title incorporates the allegations contained in Paragraphs 1 through 7 of this Complaint as if they were set forth fully herein.

9. On or about February 14, 2014, John Marshall, as Trustee of the Revocable Trust Agreement of Leona Marshall dated March 16, 1992, conveyed two parcels of real property commonly known as 3108 Lake Shore Drive, Long Beach, Indiana 46360 (respectively, "Parcel I" and "Parcel II" and together, the "Property") to Oakley via a Trustee's Deed, a copy of which is attached as **Exhibit A**. The Property is more particularly described as follows:

> PARCEL I:
> A part of Lot Fifteen (15) in Block "J", Shoreland Hills Second Subdivision as per the plat thereof recorded in Plat Book 8, Page 5 in the LaPorte County Recorder's Office, bounded and described as follows: Commencing at the Southeast corner of said Lot Fifteen (15); thence North one degree forty-five minutes zero seconds West (N 1° 45' 00" W) along the East line of said Lot Fifteen (15), a distance of twenty-nine and fifty-five hundredths (29.55) feet to the true point of beginning for said part; thence continuing North one degree forty-five minutes zero seconds West (N 1° 45' 00" W) along said East line, a distance of one hundred fourteen and forty-seven hundredths (114.47) feet to the Northeast corner of said Lot Fifteen (15); thence South fifty-eight degrees twenty-eight minutes zero seconds West (S 58° 28' 00" W) along the North line of said Lot Fifteen (15), a distance of fifty-six and eighty-six hundredths (56.86) feet; thence South thirty-one degrees thirty-two minutes zero seconds East (S 31° 32' 00" E) a distance of ninety-nine and thirty-five hundredths (99.35) feet to the true point of beginning.
> PARCEL II:
> A parcel of land in fractional Section Eleven (11), Township Thirty- eight (38) North, Range Four (4) West of the Second Principal Meridian, LaPorte County, Indiana, bounded and described as follows: Commencing at the Southeast corner of Lot Fifteen (15) in Block "J", Shoreland Hills Second Subdivision as per the plat thereof recorded in Plat Book 8, Page 5 in the LaPorte County Recorder's Office; thence North fifty-eight degrees twenty-eight minutes zero seconds East (N 58° 28' 00" E) along the South line of said Lot Fifteen (15) projected fourteen and sixty-eight hundredths (14.68) feet to the true point of beginning for said parcel, said true point of beginning lying on the Northerly right-of-way line of Lake Shore Drive; thence North thirty- one degrees thirty-two minutes zero seconds West (N 31° 32' 00" W), a distance of twenty-five and sixty-five hundredths (25.65) feet to the East line of said Lot Fifteen (15); thence North one degree forty-five minutes zero seconds West (N 1° 45' 00" W) along said East line to the water's edge of Lake Michigan; thence Northeasterly along said water's edge to the East line of said Section Eleven (11); thence South one degree forty-five minutes zero seconds East (S 1° 45' 00" E), along said East line to said Northerly right-of-way line of Lake Shore Drive; thence South fifty-eight degrees twenty-eight minutes zero seconds West (S 58° 28' 00" W) along said right-of-way line, a distance of ninety-nine and twenty-three hundredths (99.23) feet to the true point of beginning.

10. On or about October 25, 2013, an ALTA 2006 Homeowners Policy Number 72217-43235865 ("Policy") underwritten by Chicago Title was issued to Oakley as the

named insured, with an amended effective date of February 14, 2014, a copy of which is attached as **Exhibit B**.

11. On or about September 23, 2015, ATG Trust as Trustee Under Trust Number L0014-154 ("ATG Trust") filed suit (the "Suit") against Oakley in the Superior Court No. 2 of LaPorte County, Indiana alleging that ATG Trust was the holder of an easement ("ATG Easement") which burdens Parcel II.

12. On or about April 11, 2016, Oakley conveyed Parcel II to So Dun via quit claim deed, a copy of which is attached as **Exhibit C**.

13. On or about March 6, 2018, the Superior Court No. 2 of LaPorte County entered an Order on the existence, validity, and scope of the ATG Easement (the "Order"), a copy of which is attached as **Exhibit D.**

14. On or about April 30, 2018, So Dun conveyed Parcel II to Sobkowiak and Dunham as tenants in common, each as to an undivided one-half interest, via a quit claim deed, a copy of which is attached as **Exhibit E**.

15. On or about December 12, 2019, Sobkowiak conveyed his one-half interest in Parcel II back to So Dun via a warranty deed, a copy of which is attached as **Exhibit F**.

16. As of the filing of this action, based on the recorded deeds, Parcel II is owned by So Dun and Dunham as tenants in common, each as to an undivided one-half interest.

## REFORMATION

17. Regarding its applicability, the Policy provides as follows:

> It applies only to a one-to-four family residence and only if each insured named in Schedule A is a Natural Person. If the Land described in Schedule A of the Policy is not an improved residential lot on which there is located a one-to-four family residence, or if each insured named in Schedule A is not a Natural Person, contact Us immediately.

(Ex. B at 10).

18. Section 1 of the Conditions section of the Policy defines "Natural Person" as "a human being, not a commercial or legal organization or entity. Natural Person includes a trustee of a Trust even if the trustee is not a human being."

19. Oakley is the insured named in Schedule A of the Policy.

20. Oakley is a legal organization, not a human being. Therefore, Oakley is not a Natural Person as the term is defined in the Policy.

21. The Policy is not applicable to Oakley because Oakley is not a Natural Person, as defined in the Policy.

22. Despite its inapplicability to vacant land, the Policy acknowledges that the Property was vacant land at the time the Policy was issued to Oakley. (Ex. B at 23).

23. It would not have been reasonable for Oakley to have purposefully purchased an insurance policy which did not apply to it or the Property. Likewise, it would not have been reasonable for Chicago Title to have purposefully underwritten a policy which did not apply to Oakley or the Property.

24. The foregoing discrepancies in the Policy are clear and convincing evidence that there existed a mutual mistake between Chicago Title and Oakley at the time the Policy was issued.

25. More specifically, Chicago Title mistakenly underwrote a policy of insurance which was inapplicable to Oakley and the Property, and Oakley mistakenly accepted a policy of insurance which was inapplicable to it and the Property.

26. Indiana common law recognizes the equitable remedy of reformation in instances where the parties to a contract were mutually mistaken regarding the terms of their agreement.

27. Therefore, in order to remedy the parties' mutual mistake, Chicago Title seeks to reform the Policy to reflect the provisions contained in the 2006 ALTA Owner's Policy ("Owner's Policy"), attached as **Exhibit G**, which applies to business entities and vacant land.

## THE COVERAGE DISPUTE

28. Chicago Title incorporates the allegations contained in Paragraphs 1 through 27 of this Complaint as if they were set forth fully herein.

**I.   Oakley is not entitled to coverage under the Policy because it is not a natural person.**

29. The Policy provides that "[i]t applies only to a one-to-four family residence and only if each insured named in Schedule A is a Natural Person."

30. Oakley is not a Natural Person as the term is defined in the Policy.

31. The Policy admonishes the insured that "if each insured named in Schedule A is not a Natural Person, contact [Chicago Title] immediately."

32. Oakley did not contact Chicago Title to inform it that "each insured named in Schedule A is not a Natural Person."

33. Therefore, Oakley is not entitled to coverage under the Policy because it is not a Natural Person.

## II. Additionally, Oakley is not entitled to coverage under the Policy because it did not suffer an actual loss.

34. Pursuant to the terms of the Policy, it entitled the insured to coverage "against actual loss" resulting from "one or more of the Covered Risks set forth" in the Policy. (Ex. B at 10).

35. One of the covered risks set forth in the Policy is when "[s]omeone else has an easement on the Land." (Ex. B at 12).

36. The Policy defines "You/Your" as "the insured named in Schedule A and also those identified in Section 2.b. of these Conditions." (Ex. B at 17).

37. Section 2 of the Conditions section of the Policy provides as follows:

2. **CONTINUATION OF COVERAGE**
   a. This Policy insures You forever, even after You no longer have Your Title. You cannot assign this Policy to anyone else.
   b. This Policy also insures:
      (1) anyone who inherits Your Title because of Your death;
      (2) Your spouse who receives Your Title because of dissolution of Your marriage;
      (3) the trustee or successor trustee of a Trust or any Estate Planning Entity to whom You transfer Your Title after the Policy Date; or
      (4) the beneficiaries of Your Trust upon Your death, or
      (5) anyone who receives Your Title by a transfer effective on Your death as authorized by law.

38. By letter dated October 30, 2015, Oakley tendered its defense of the Suit to Chicago Title.

39. On March 7, 2016, Chicago Title partially accepted Oakley's defense to the extent ATG Trust sought to enforce the ATG Easement.

40. Although Chicago Title provided Oakley's defense in the Suit, Oakley is not entitled to indemnification under the Policy because it did not suffer an actual loss.

41. Oakley did not suffer an actual loss because it conveyed Parcel II to So Dun before the Superior Court No. 2 of LaPorte County entered its Order which confirmed the existence, validity, and scope of the ATG Easement.

**III. Oakley's successors in interest are not entitled to coverage under the Policy.**

42. So Dun is not entitled to coverage under the Policy because it is not the named insured and is not identified as being entitled to continuing coverage under Section 2(b) of the Conditions Section of the Policy. Specifically, So Dun is not entitled to coverage because:

    (1) it did not inherit title to Parcel II because of Oakley's death;

    (2) it did not receive title to Parcel II because of the dissolution of its marriage with Oakley;

    (3) it is not a trustee of a trust or an estate planning entity to which Oakley transferred its title to Parcel II;

    (4) it is not the beneficiary of Oakley's trust; and

    (5) it did not receive title to Parcel II effective on Oakley's death as authorized by law.

43. Sobkowiak is not entitled to coverage under the Policy because he did not obtain title from a named insured under the Policy.

44. Dunham is not entitled to coverage under the Policy because he did not obtain title from a named insured under the Policy.

**IV.   Oakley is not entitled to coverage for the ATG Easement under the Owner's Policy.**

45.   Section 3 of the Exclusions from Coverage section of the Owner's Policy provides that "Defects, liens, encumbrances, adverse claims, or other matters . . . resulting in no loss or damage to the Insured Claimant" "are expressly excluded from the coverage of [the Owner's Policy]."  (Ex. G at 4).

46.   Oakley did not suffer any loss or damage as a result of the ATG Easement because it conveyed Parcel II to So Dun before the Superior Court No. 2 of LaPorte County entered its Order which confirmed the existence, validity, and scope of the ATG Easement.

47.   Therefore, Oakley is not entitled to coverage under the Owner's Policy because the ATG Easement is expressly excluded from coverage under the Owner's Policy.

**V.   Oakley's successors in interest are not entitled to coverage under the Owner's Policy.**

48.   Section 1(d) of the Conditions section of the Owner's Policy defines "Insured" as follows:

(d) "Insured": The Insured named in Schedule A.

    (i) the term "Insured" also includes

        (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

        (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

        (C) successors to an Insured by its conversion to another kind of Entity;

        (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

            (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

            (2) if the grantee wholly owns the named Insured,

            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

    (ii) with regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

49. So Dun is not entitled to coverage under the Owner's Policy because it is not the named insured and does not qualify as an additional insured under Section 1(d) of the Conditions Section of the Owner's Policy. Specifically, So Dun is not entitled to coverage because:

(1) So Dun did not take title to Parcel II by operation of law;

(2) So Dun is not a successor to Oakley by dissolution, merger, consolidation, distribution, or reorganization;

(3) So Dun is not a successor to Oakley by its conversion to another kind of entity;

(4) So Dun's stock, shares, memberships, or other equity interests are not wholly owned by Oakley;

(5) So Dun does not wholly own Oakley;

(6) So Dun is not wholly-owned by an affiliated entity of Oakley; and

(7) So Dun is not a trustee or beneficiary of a trust created by a written instrument established by Oakley for estate planning purposes.

10

50. Sobkowiak is not entitled to coverage under the Owner's Policy because he did not obtain title from a named insured under the Owner's Policy.

51. Dunham is not entitled to coverage under the Owner's Policy because he did not obtain title from a named insured under the Owner's Policy.

**THE CONTROVERSY AND DEMAND FOR RELIEF**

52. Chicago Title incorporates the allegations contained in Paragraphs 1 through 51 of this Complaint as if they were set forth fully herein.

53. An actual controversy exists between the parties hereto concerning whether Chicago Title has a duty under the Policy to indemnify Oakley, and/or the other Defendants, for the entry of the order by the Superior Court No. 2 of LaPorte County's Order confirming the existence, validity, and scope of the ATG Easement.

54. An actual controversy also exists between the parties hereto concerning whether the Policy should be reformed to reflect the terms of the Owner's Policy, and whether Chicago Title would have a duty under the reformed Owner's Policy to indemnify Oakley, and/or the other Defendants, for the entry of the order by the Superior Court No. 2 of LaPorte County's Order confirming the existence, validity, and scope of the ATG Easement.

55. Chicago Title contends that it does not have a duty to indemnify Oakley under the terms of the Policy, and Oakley contends that Chicago Title has a duty under the Policy to indemnify it.

56. Chicago Title contends that reformation of the Policy is necessary to remedy the issuance of the incorrect insurance policy as a result of the parties' mutual mistake.

57. Chicago Title contends that it would not have a duty to indemnify Oakley, and/or the other Defendants, under the terms of the reformed Owner's Policy, and Oakley contends that Chicago Title has a duty under the Owner's Policy to indemnify it.

58. So Dun, Sobkowiak, and Dunham have been joined in this action by virtue of their interest in the resolution of the forgoing controversy.

**WHEREFORE**, Chicago Title respectfully requests the following relief:

A. That the Court reform the Policy to reflect the provisions contained in the Owner's Policy which applies to business entities and vacant land.

B. That the Court declare that Chicago Title has no duty to indemnify Oakley for any loss relating to the ATG Easement, either under the Policy or the Owner's Policy;

C. That the Court declare that Chicago Title has no duty to indemnify So Dun for any loss relating to the ATG Easement, either under the Policy or the Owner's Policy;

D. That the Court declare that Chicago Title has no duty to indemnify Sobkowiak for any loss relating to the ATG Easement, either under the Policy or the Owner's Policy;

E. That the Court declare that Chicago Title has no duty to indemnify Dunham for any loss relating to the ATG Easement, either under the Policy or the Owner's Policy;

F. Such other relief as the Court may deem just and proper.

*/s/ Corey J. Dunn*
Brian R. Pollock (bpollock@stites.com)
Corey J. Dunn (cdunn@stites.com)
STITES & HARBISON PLLC
323 East Court Avenue
Jeffersonville, IN  47130
Telephone:  (812) 282-7566
*Counsel for Chicago Title Company*

1544299:6:LOUISVILLE

13